UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

KARAM KALOIAN,

Petitioner,

v.

TODD BLANCHE, et al.,

Respondents.

Case No. 2:26-cv-06554-PD

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

**A# 246-614-651**

Karam Kaloian ("Petitioner") filed a counseled, verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Dkt. No. 1. Subsequently, Petitioner filed a motion for preliminary injunction. Dkt. No. 13. The Court has considered the relevant pleadings, including the Petition, Respondents' answer, and Petitioner's traverse. For the reasons stated below, the Petition is granted in part.

## I. Background

Petitioner is a noncitizen who arrived in the United States on January 23, 2023, turned himself in to Customs and Border Patrol, and was detained by Immigration and Customs Enforcement ("ICE). Dkt. No. 1, Petition ¶¶ 2, 3, 46, 47. On January 27, 2023, removal proceedings were initiated

against him on the grounds that he arrived in the United States without admission or parole. *Id.* ¶ 4. In June 2023 he filed an application for asylum, and in May 2025, he filed a Petition for U Nonimmigrant Status based on his cooperation with law enforcement in arresting and prosecting an individual who assaulted him. *Id.* ¶¶ 6, 7, 50. Based on the information provided to the Court, Petitioner's removal proceedings are pending; he is not subject to a final order of removal.

Petitioner was in immigration detention from January 23, 2023, until February 7, 2023, when ICE released him pursuant to an Order of Release on Recognizance. *Id.* ¶¶ 5, 49; Dkt. No. 1-4. He has resided in the United States since that time. *Id.* ¶ 10. In December 2023, he was granted employment authorization and engaged in gainful employment. *Id.* ¶¶ 10, 48-50. He had numerous check-ins with ICE during the more than 39 months that he resided in the United States. *Id.* ¶ 51.

Petitioner also acquired criminal history during that time. The Federal Bureau of Investigation ("FBI") fingerprint search submitted by Petitioner and the Form I-213 submitted by Respondents identify that criminal history. *See* Dkt. Nos. 1-8; Dkt. No. 8-1 at 3. The Court has reviewed both records, which contain some inconsistent information, and finds that Petitioner's post-release criminal history is as follows:

On August 12, 2024, Petitioner was arrested by the Beverly Hills Police Department for disorderly conduct with drugs/alcohol in violation of Cal. Penal Code § 647(f). This charge was dismissed.[1]

[1] Petitioner provides a name search from the Superior Court of California, County of Los Angeles, which shows that from January 1986 to October 2025, one case was filed involving Petitioner's name: case number 25ARCM00135-01. This case was dismissed. *See* Dkt. No. 1-6. The Court searched this case number on the Los Angeles Superior Court website. The website reflects that Petitioner was arrested on October 12, 2024 for disorderly conduct under Penal Code § 647(f), and the case was dismissed on October 16, 2025. *See* https://www.lacourt.ca.gov/pages/lp/access-a-case/tp/find-case-information/cp/os-criminal-case-access (last accessed September

On January 21, 2025, Petitioner was arrested by the Glendale Police Department and charged with reckless driving under Cal. Veh. Code § 23103(a) and driving under the influence of alcohol ("DUI") under Cal. Veh. Code § 23152(a), (b). *See* Dkt. No. 1-8 at 6. On July 16, 2025, Petitioner was convicted of misdemeanor reckless driving, and the remaining DUI charges were dismissed pursuant to a plea.[2] He was sentenced to one year probation and a fine.

On February 28, 2025, Petitioner was arrested by the Los Angeles Sheriff's Department and charged with a DUI (alcohol). According to Petitioner, those charges are pending. Petition ¶ 55.

On April 15, 2025, Petitioner was arrested by the Beverly Hills Police Department for disorderly conduct with drugs and alcohol. Based on the record, the Court cannot determine whether the charge is pending. *See* Dkt. No. 1-8 at 8.

On May 11, 2026, Petitioner was cited and arrested by the Beverly Hills Police Department for, according to Petitioner, having one beer in public, and he must pay the citation by August 2026. *See* Petition ¶¶ 53–56. The Form I-

---

23, 2026). The FBI record and the I-213 do not reflect an October 12, 2024 arrest, but do show an August 12, 2024 arrest for disorderly conduct under Penal Code § 647(f). The FBI search does not reflect a conviction for this charge; the I-213 states it resulted in a conviction. After reviewing the records, the Court concludes that the August 12, 2024 arrest referenced in the FBI search and I-213 corresponds with case number 25ARCM00135-01 and that this case was dismissed.

[2] The I-213 reflects that Petitioner was also arrested by the Beverly Hills Police Department on July 16, 2025 (the same day he was convicted for reckless driving) for disorderly conduct under Cal. Penal Code § 647(f) and sentenced to one year probation and a fine. However, the same page of the I-213 also states that the disposition is pending. *See* Dkt. No. 8-1 at 3. Given the identical dates and sentence, the fact this arrest is not reflected on the FBI document, and the contradictory information in the I-213, the July 16, 2025 "arrest" likely refers to the conviction for the misdemeanor reckless driving. Dkt. No. 1-8 at 6. Therefore, the Court concludes there was no arrest on July 16, 2025.

213 states this incident was for disorderly conduct (drugs/alcohol) under Cal. Penal Code § 647(f). Dkt. No. 8-1 at 3.

Based on the above information, since being released by immigration authorities, Petitioner has sustained five arrests by local law enforcement all related to being intoxicated with drugs or alcohol, was convicted for reckless driving, has at least one pending charge for disorderly conduct with drugs and alcohol, and has a citation for having alcohol in public.

On May 14, 2026, Petitioner was detained by Immigration and Customs Enforcement ("ICE") at his routine check-in. Petition ¶ 59.

## II. Discussion

The Petition raises three claims: (1) Petitioner's re-detention violated procedural due process; (2) his re-detention without a hearing violates the Immigration and Nationality Act ("INA"); and (3) his detention is unlawful under the Administrative Procedures Act ("APA").

Respondents' answer to the Petition is that Petitioner has several similar arrests, all involving disorderly conduct, intoxication of drugs/alcohol, or driving under the influence of alcohol, but that despite this criminal history Petitioner appears to be member of the Bond Eligible Class in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025) (the "Bond Eligible Class"). Dkt. No. 8 at 2. As such, Respondents contend that Petitioner's relief is limited to, at most, a bond hearing under 8 U.S.C. § 1226(a). *Id.* Respondents do not set forth the basis for their position that Petitioner is a member of the Bond Eligible Class. In his Traverse, Petitioner explains that he is not a member of the Bond Eligible Class because, although he entered the United States without admission or inspection, he was immediately detained by ICE and was released after 17 days under a Form I-220A Order of Release on Own Recognizance. *See* Dkt. No. 1-4. The Form I-220A states, "You have been arrested and placed in

removal proceedings. In accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions." USCIS, Form I-220A, https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf. The I-220A form identifies various conditions on the noncitizen's release. *Id.*

The Court agrees with Petitioner that he is not a member of the Bond Eligible Class, because he was detained by ICE after he entered the United States. Members of the Bond Eligible class "were not or will not be apprehended" upon arrival. *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1127 (C.D. Cal. 2025).

**A. Procedural Due Process**

Petitioner argues that his re-detention without a pre-deprivation hearing violated due process. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The protection afforded by the Due Process Clause runs to citizens and noncitizens alike. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Evaluating the contours of Petitioner's due process rights proceeds in two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1. Protected Liberty Interest

On the first point, the Court finds that Petitioner has a protected liberty interest in remaining at liberty in the community absent sufficient justification for his re-detention.

Conditional release from physical restraint may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). Once an individual is granted conditional release, therefore, he may have a protected liberty interest in remaining in the community—and an attendant right to procedural protections before that liberty is revoked. *See id.* (due process requires pre-deprivation hearing before revocation of pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). In deciding whether a specific form of conditional release gives rise to a protected liberty interest, courts compare the form of conditional release at issue with the parolee's liberty interest, as described in *Morrissey v. Brewer*, a seminal case in this area. *See González-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole enables a parolee “to do a wide range of things” available to individuals who have never been convicted of any crime—to live at home, work, be with his friends and family, and “form the other enduring attachments of normal life.” *Morrissey*, 408 U.S. at 482. “Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens,” including monitoring and requiring authorization to work and travel, the parolee's “condition is very different from that of confinement in a prison.” *Id.* Moreover, a parolee “relie[s] on at least an implicit promise that parole will be revoked only if she fails to live up to the parole conditions.” *Id.* The revocation of parole

undoubtedly "inflicts a grievous loss on the parolee," and as such, a parolee possesses a protected interest in his continued liberty. *Id.* at 481-84.

Petitioner's release was an implicit promise that he would be able to stay in the community for the duration of his administrative proceedings so long as he complied with the conditions of his release. His conditional release permitted him to live in the community and work, which he has done since his release. *Id.* The Court thus concludes—as have many courts in this Circuit—that once Petitioner was released on the order of release on recognizance, he gained a protected liberty interest in remaining out of custody. *E.g., Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody"); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (finding that "the government's decision to release an individual [from immigration custody] creates an implicit promise that the individual's liberty will be revoked only if they fail to abide by the conditions of their release") (cleaned up); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

**2. Process Owed in Connection with Re-Detention**

Given that Petitioner has a protected liberty interest in his conditional release, the issue is what process he is owed before the government would take that liberty interest away. Petitioner claims that due process required process before he was taken into custody. Petition ¶¶ 72-77. He thus argues that the appropriate habeas remedy is for him to be released under reasonable conditions of supervision or alternatively, to receive a bond

hearing before an Immigration Judge at which Respondents bear the burden of justifying continuing detention. Petition at 20.

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming, without deciding, that *Mathews v. Eldridge* applies in immigration detention context, and collecting authority applying *Mathews* to immigration detention). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

As to the first factor, and as set out in the prior section, Petitioner has a liberty interest in remaining in the United States, where he has lived and worked for more than three years. *See Ortega*, 415 F. Supp. 3d at 970 (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Regarding the second factor, Petitioner argues there is a significant risk that the government will erroneously deprive him of that liberty interest if it does not provide him with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). And where a petitioner has not received any custody hearing or other process in connection with the revocation of his parole, "the

risk of an erroneous deprivation [of liberty] is high." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

Respondents have not identified any process that Petitioner received. Civil immigration detention is constitutionally permissible only to prevent flight or protect against danger to the community. *See Zadvydas*, 533 U.S. at 690. Evaluation of the appropriateness of detention under 8 U.S.C. § 1226(a) is keyed to those same two factors. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). It was those factors that were necessarily found when Petitioner was initially released. Petition ¶ 73; *see Noori v. LaRose*, 807 F. Supp. 3d 1146, 1167 (S.D. Cal. 2025) ("In general, '[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.' "); *Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted) (a petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (risk of erroneous deprivation is considerable for petitioner previously released on bond after it was determined he was not a danger to the community or a flight risk).

Once Petitioner was released, he had a liberty interest "in remaining at liberty unless [he] no longer meets those criteria." *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *13 (E.D. Cal. Sept. 5, 2025) (cleaned up). In evaluating the second *Matthews* factor, courts have considered whether there are materially changed circumstances, such as criminal history or non-compliance with release conditions. *See e.g., Calderon v. Kaiser*, No. 25-CV-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (noting that petitioner who was released on her own recognizance did not violate the conditions of her release which included reporting for any

hearing or interview); *Singh*, 803 F. Supp. 3d at 1047 ("Petitioner has no criminal history and indicates that he has attended every check-in and court hearing since he arrived in the United States."); *De Vasquez v. Chestnut*, No. 1:25-CV-1999-JDP, 2026 WL 25539, at *4 (E.D. Cal. Jan. 5, 2026) (noting that since release, "there has been no indication that [petitioner] has become a flight risk or danger to the community").

Here, when Petitioner reported to the ICE Los Angeles Intensive Supervision Appearance Program ("ISAP") office on May 14, 2026, ICE officers arrested him because he had violated his release conditions. *See* Dkt. No. 8-1 at 2, Form I-213. ICE officers identified themselves to Petitioner, and he "was notified of his arrest on May 11, 2026 for Disorderly Conduct: Intoxication due to Drugs or Alcohol (647(f) PC) and a Local Ordinance Violation. The incident is subject to a custody redetermination under the ATD [Alternatives to Detention] program." *Id.*

Petitioner was advised that he was being re-detained because he had violated his release conditions. He contends that due process required not only notice, but also a pre-deprivation hearing, and he cites cases in which courts found that absent evidence of "urgent concerns", a pre-deprivation hearing is required to satisfy due process. Petition ¶ 76. He cites *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021 (N.D. Cal. 2025), in which the district court concluded that due process required a pre-deprivation hearing under the facts of that case, where the petitioner had previously been released by an Immigration Judge after a hearing, had been free on bond for more than two years, was arrested by local police after he suffered a mental health episode and released the next day without charges being filed, and ICE subsequently decided to re-detain him, after informing him that his supervision would be de-escalated, purportedly based on the arrest, though ICE had not obtained a copy of the police report. *Id.* at 1028–29, 36. In *Rodriguez v. Kaiser*, 2025 WL

2855193, at * 7 (E.D. Cal. Oct. 8, 2025), also cited by Petitioner, the district court concluded that due process required a pre-deprivation hearing based on the facts there, a pregnant petitioner with no criminal history who had complied with all release conditions.

The circumstances in those cases were such that the risk of erroneous deprivation was significant without a pre-deprivation hearing. The circumstances here do not compel that conclusion. Petitioner had been released by ICE on conditions; ICE advised him that his arrest for Disorderly Conduct: Intoxication due to Drugs or Alcohol (647(f) PC) had violated those conditions. As reflected in the Form I-213, this arrest was not an isolated incident. On this record, which includes demonstrably changed circumstances since his release and ICE notifying Petitioner that he was being detained for violating his release conditions, Petitioner has not shown that a pre-determination hearing was required to address the risk of erroneous deprivation. However, due process does require an individualized bond hearing before an Immigration Judge.

**3. Government Interest**

The government has a strong interest in preventing noncitizens from remaining in the United States in violation of the law. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). However, the government has no legitimate interest in detaining Petitioner without a hearing pursuant to 8 U.S.C. § 1226(a).

Therefore, after considering the *Mathews* factors, the Court finds that a post-deprivation bond hearing will satisfy due process in this case. At the bond hearing, an Immigration Judge can consider all of the evidence, including the circumstances surrounding Petitioner's criminal history, his residency, and his community ties, and determine whether there is a risk of danger and if so, whether that risk can be sufficiently mitigated by release on

specified conditions. In light of Petitioner's liberty interest, his previous release by the government, and his re-detention without process, at the bond hearing the government should bear the burden of proof by clear and convincing evidence.

Accordingly, the Court grants Count One under procedural due process, as described above. To the extent Petitioner argues that his detention serves no legitimate purpose and violates substantive due process, the Court finds the record is insufficient at this time, given Petitioner's criminal history. In any event, the IJ is better suited to make that initial finding, following the procedures outlined above.

**B. Immigration and Nationality Act**

Count Two argues that Respondents violated the INA by re-detaining Petitioner without affording him a hearing to determine whether his re-detention served a statutory or regulatory purposes. Petition at 19. Petitioner provides no authority that a pre-deprivation hearing was required under the INA statutes and regulations. Moreover, for the reasons already discussed, the Court finds that the facts of this case warrant a post-deprivation hearing. Therefore, Count Two is denied.

**C. Administrative Procedures Act**

Count Three argues that Respondents violated the APA by revoking Petitioner's Order of Release on Recognizance without a warrant or compliance with the regulatory requirements. *See* Petition ¶ 109.

Under 5 U.S.C § 704, the APA permits review of a "final agency action for which there is no other adequate remedy in a court." An agency action is final when it marks the "consummation" of the agency's decision-making process and determines rights or obligations or produces legal consequences. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). If the action is final and reviewable, § 706(2) permits a court to set it aside if the agency acted

"arbitrarily, capriciously, with an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Courts have applied this standard to parole-revocation decisions and, where appropriate, have set aside the agency action and ordered the petitioner released. *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1144–47 (D. Or. 2025) (ordering release and finding parole under 8 U.S.C. § 1182(d)(5) was unlawfully revoked because no facts showed that the purpose of parole had been served or that petitioner was a flight risk or danger); *Kirboga v. Larose*, 819 F. Supp. 3d 1137, 1153–54 (S.D. Cal. 2025) (finding re-detention of petitioner with no criminal history at his immigration court appearance to be arbitrary and capricious under the APA where petitioner was not provided notice or a reason why he was a flight risk or danger); *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1198–1200, 1204 (W.D. Wash. 2025) (finding APA violation where re-detention under 8 U.S.C. § 1226(a) was not justified by a contemporaneous explanation, post-hoc explanations were unsupported by the record, and revocation was not made by official with regulatory authority, and where petitioner had been released for eight years, had no criminal history and never missed an ICE check-in).

Here, given Petitioner's criminal history, the record does not support that ICE's decision to re-detain him was arbitrary. Therefore, Count Three is denied.

## III. Conclusion

The Petition is granted in part under procedural due process. Petitioner has filed a motion for preliminary injunction which is substantially based on the allegations in the Petition. Dkt. No. 13. Petitioner seeks release subject to the conditions in effect before May 14, 2026, and an order enjoining re-detention absent changed circumstances and due process. *Id.* at 2. Petitioner argues his pre-existing conditions, including post-traumatic stress disorder,

anxiety and other mental health symptoms—stemming from a May 2025 attack, have been exacerbated during his detention. Petitioner argues his detention is becoming unconstitutionally prolonged, alleges the conditions at Adelanto are deficient, and that ICE has refused to take him to appointments for his U-visa application.[3]

Given that the Petition is granted in part, the Court denies as moot the motion for preliminary injunction.

## IV. Order

For the foregoing reasons, the Petition is GRANTED as to Count One under procedural due process, and the remaining counts are dismissed. The motion for preliminary injunction is DENIED as moot. Dkt. No. 13.

Respondents are enjoined from continuing to detain Petitioner Karam Kaloian (A# 246-614-651) unless no later than seven (7) days from the date of this Order, Petitioner is provided with an individualized bond hearing before an Immigration Judge under 8 U.S.C. § 1226(a), at which the Government will bear the burden of proof by clear and convincing evidence.

DATE: September 29, 2026

Patricia Donahue

Patricia Donahue
United States Magistrate Judge

[3] However, in an exhibit attached to the motion, it appears ICE informed Petitioner's counsel that he could be fingerprinted at the detention facility for his biometrics appointment. *See* Dkt. No. 13-5.